No. 35,704

THE FEDERAL SAVINGS & LOAN INSURANCE CORPORATION, Receiver for the Aetna Federal Savings & Loan Association, *Appellee*, v. THE STRANGERS' REST BAPTIST CHURCH, an Unincorporated Religious Society, et al., *Appellants*.

(131 P. 2d 654)

Opinion filed December 12, 1942.

*William H. Towers*, of Kansas City, argued the cause for the appellants.

*Floyd A Sloan*, of Topeka, argued the cause, and *William H. McCamish*, of Kansas City, was on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This appeal is to obtain a review of the trial court's ruling on a pleading in an action to foreclose a real-estate mortgage on church property in Kansas City.

It appears that on and prior to February 6, 1926, the church property involved was owned by the Quayle Memorial Methodist Episcopal Church, a corporation. On that date that church sold and conveyed it by warranty deed to The Strangers' Rest Baptist Church, an unincorporated religious organization. At the same time the grantor delivered possession of the property to the board of trustees of the designated grantee. The consideration for the property was $13,000. Of that sum, ten thousand dollars was raised by the trustees of the grantee by executing a promissory note to the Aetna Building and Loan Association of Topeka. This note was of the typical sort used by building associations, where the borrower purchases installment shares of stock in the lending concern, binds himself to pay a stated amount every month on those shares (computed on the equivalent of the principal and interest on the indebtedness and certain dues) until they are paid in full, at which time the

shares and the note and mortgage cancel each other and the borrower's obligation is discharged.

In conformity with this procedure the trustees of the Strangers' Rest Baptist Church purchased twenty shares of installment stock in the building and loan association having a par value of $500 each, and they and forty individuals executed the note and mortgage sued on in this action.

The note, in part, reads:

"In consideration of ten thousand dollars, borrowed money, the receipt whereof is hereby acknowledged, we promise to pay to the Aetna Building and Loan Association, of Topeka, Kansas, the sum of ten thousand dollars with interest," etc.

The mortgage, in part, reads:

"Know all men by these presents, That the Strangers' Rest Baptist Church, by its duly-elected, qualified and acting trustees, (grantor ———), of the county of Wyandotte, and state of Kansas, for and in consideration of the sum of ten thousand dollars in hand paid by the Aetna Building and Loan Association, of Topeka, Kansas, (grantee), do hereby sell and convey unto the said the Aetna Building and Loan Association, and its successors, or assigns, the following-described premises," etc.

Both the note and the mortgage were signed and executed thus:

"THE STRANGERS' REST BAPTIST CHURCH.

By: Charlie Tucker, Roy Fuget, William Williams, H. C. Scott, John Jones, John Barksdale, H. C. Campbell, R. D. Meeks, Emanuel McCaskill, Elijah Jones, M. C. Watson, N. T. Alexander, *Trustees*.

Felix Pitts,. Katherine Caldwell, Lula Howard, Gertrude Phelps, Gussie Goodman, Nancy Buchanan, Jr., Vorshorn, Rosa Holloway, Tallman White, Anna Wells, Harrison Tinker, Hazel Tinker, Hersey Mitchell, Rosie D. Miller, Cora Lovell, Ethel Tucker, Edna Watson, Bell Walker,. Anna McDowell, Josephine Campbell, Callie Hank, Charity White, Lutishia Alexander, Sallie Williams, Lizzie Johnson, Sidney Thomas, Willie Mae Lee, Martha Green, Elvira Jenkins, Elnora Pitts, Anna May Fuget, Sara Williams, Willie Williams, Henry Shannon, Earl Weaver, Della Weaver, Mary Marsh, Martha Wiseman, Nellie Shannon, William Elijah Jones, *Individuals*."

Plaintiff's petition alleged that the corporate name of the original payee of the note and mortgage was changed to Aetna Federal Savings and Loan Association, and that the Strangers' Rest Baptist Church, by its board of trustees, Charles Tucker and the others named above, executed and delivered to plaintiff a real-estate mortgage on the church property (described) which had been acquired from the grantor, which mortgage was given as security for the payment of $10,000; and that on and after March 1, 1939, default

had been made in the payments of the note and mortgage, and in the payment of the dues on the installment stock pertaining thereto, whereby the entire unpaid balance on the note and mortgage became due and payable, and that to protect its lien plaintiff had been obliged to pay out sums of money for insurance and taxes on the mortgaged premises.

Plaintiff alleged that on December 21, 1940, when this action was begun, there was due and owing on defendants' obligation aforesaid the sum of $10,004.38 and interest thereon at 10 percent per annum.

Plaintiff also alleged that certain named persons claimed some interest in the property, but whatever its nature it was inferior to that of plaintiff. Judgment was prayed for against all the trustees and individuals who had signed the note and mortgage, and that the mortgage be foreclosed, a first lien be declared in the mortgaged property, and that it be ordered sold and the proceeds applied as the statute directs. Plaintiff also prayed that all named defendants and all persons claiming through or under them be barred of all right in the premises and for other equitable relief.

A general appearance was entered in the action in behalf of certain named defendants and the board of trustees of the Strangers' Rest Baptist Church.

A general demurrer to plaintiff's petition filed by the trustees of the defendant church was overruled, but plaintiff thereafter filed an amended petition. Impleaded in it were Rev. C. A. Washington, pastor of the Strangers' Rest Baptist Church, the Quayle Memorial Methodist Episcopal Church, a corporation, also its trustees, naming them; also the Board of Home Missions and Church Extension of the Methodist Episcopal Church, a corporation, and many other defendants, unknown heirs, executors, administrators, trustees, devisees and assigns, as to whom no present attention need be given. Service by publication was obtained on various defendants.

The amended petition pleaded substantially the same facts contained in the original petition, with additional matter which may be summarized thus: The names of the members of the board of trustees of the Strangers' Rest Baptist Church were set out, and they were alleged to be carrying on its business affairs "and are the successors of all former trustees of said religious society." The Board of Home Missions and Church Extension of the Methodist Episcopal Church, impleaded as defendant, was alleged to be a Pennsylvania corporation. The Quayle Memorial Methodist Epis-

copal Church was alleged to be a religious corporation under Kansas law and the names of its trustees were set forth. The amended petition then continued—

"That the Strangers' Rest Baptist Church is constituted of a large number of persons whose names are not known to plaintiff, so numerous that it is impractical to name them as defendants herein; that their names are unknown to plaintiff and cannot be ascertained by the exercise of due diligence, and the subject matter of this action is one of common, general interest to all such members. That the business and secular affairs of said religious society are and were at all of the times herein mentioned, transacted by a board of trustees elected by the members of the society."

It was next alleged that the persons who signed the note and mortgage on February 6, 1926, as trustees, were at that time the duly elected, qualified and acting members of the board of trustees of the Strangers' Rest Baptist Church. The facts of the negotiations between said board and the Quayle church corporation were pleaded, likewise the facts of the borrowing of the money to pay for the church from the plaintiff's predecessor, including the subscription by the board of trustees for twenty shares ($500 each) of the stock in the building and loan association, payee of the note and mortgage. It was further alleged:

"That all of the acts of said former board of trustees hereinbefore alleged, were done and performed with full power and authority conferred upon them by the members of said Strangers' Rest Baptist Church as provided by the constitution and bylaws, custom and practice of said religious society and approval and ratification thereof since the purchase of said real estate by the board of trustees."

The trustees of the Strangers' Rest Baptist Church, then serving in that capacity, filed an answer which contained a general denial, certain admissions, also a denial that the *answering* defendants had executed the note and mortgage sued on. They alleged that whoever did sign it did so without authority or approval of the congregation of the Strangers' Rest Baptist Church, and that said signers were personally liable and did not bind the congregation. The answer also disputed the correctness of the amount stated to be the true balance due on the note and mortgage.

The answer also alleged a defect of parties because many of the individual signers of the note and mortgage were either dead or had ceased to be members of the congregation; that at the time of the transaction whereby the plaintiff's predecessor loaned the money to purchase the church property and accepted the note and mortgage

sued on, as evidence of and security for the indebtedness thus incurred, the congregation did not vote on the matter and that the church (membership) did not take any action thereon at any regular or special meeting called for that purpose.

The answer next alleged—

"12. These defendants state that the Quayle Memorial Methodist Episcopal Church, a religious corporation, by and through its trustees, conveyed title to the property described in plaintiff's amended petition by warranty deed to the Strangers' Rest Baptist Church. Said conveyance was not made to the trustees of said church for the use and benefit of it, but to the church itself which was unincorporated. . . .

"13. Defendants further state that at the time of the attempted transaction, the individuals named as trustees of Strangers' Rest Baptist Church by the plaintiff in its amended petition did not have title to said property in themselves. Said note and mortgage is null and void. First, because said trustees named in plaintiff's petition did not have authority from the congregation of said church to make and to sign said note and mortgage for and on behalf of the church. Second, because none of said trustees nor any of the individuals named in plaintiff's amended petition had the title to said church property in their care."

The answer concluded with a prayer that plaintiff be required to account to the answering defendants (trustees) for all moneys paid to it on the note and mortgage, that the note and mortgage be declared void, and that the defendants' title to the property be declared "absolute and perfect" and that plaintiff be excluded from any interest therein, and for further equitable relief.

The Rev. Charles A. Washington filed a separate answer, which among other matters alleged that he was pastor of the Strangers' Rest Baptist Church, and that his predecessor in that capacity had been one Rev. Moses Williams. In part his answer alleged:

"That at the time the trustees of the Quayle Memorial Methodist Episcopal Church attempted to convey title to the church property described in plaintiff's amended petition to the Strangers' Rest Baptist Church, the said Strangers' Rest Baptist Church was not a corporation, and that because of said fact there was a failure of title. Defendant states that upon the failure of said title to pass from the trustees of said Methodist Church to the said Strangers' Rest Baptist Church, this defendant and his predecessor in office became the trustee for said Strangers' Rest Baptist Church; that the title to said church property was and is now in this defendant and his predecessor in office."

The defendant Quayle Memorial Methodist Episcopal Church, by the chairman of its board of trustees and by its authority, filed an answer and disclaimer, alleging that neither that church nor its board of trustees claimed any right, title or interest in the mort-

gaged property. It alleged that in 1926, after negotiations with the board of trustees of the Strangers' Rest Baptist Church, for a consideration of $13,000 it sold and transferred the property to the latter church and delivered possession to the trustees thereof, since which time the answering trustees of the Quayle church and their predecessors as trustees claimed no interest in the property.

Plaintiff filed a reply to the answer of the trustees of the Strangers' Rest Baptist Church, denying that the trustees of said church in 1926 had executed the note and mortgage without the consent and direction of the congregation and without the consent and direction of the then pastor of the church. With appropriate allegations plaintiff set up a copy of a church meeting and of its board of trustees held on August 15, 1925 (exhibit "C") authorizing the trustees to borrow $10,000 "from whoever they may find willing to favor us with such loan and we the Strangers' Rest Baptist Church will be responsible for same." (Signed by eight of the trustees and by Rev. Moses Williams, pastor.)

Plaintiff with appropriate allegations also set up a copy of a resolution of the trustees, adopted on December 29, 1929 (exhibit "D"), whereby they authorized a substitution agreement with the Aetna Building & Loan Association to accept new installment stock for the prior stock which the mortgagee held as collateral security for the loan, whereby the interest rate would be reduced from 10 percent to 7.8 percent; and the trustees were authorized to execute any and all papers necessary to effectuate the agreed substitution.

Plaintiff also with appropriate allegations set up another substitution agreement (exhibit "E"), made on June 4, 1936, between the board of trustees and the Aetna Federal Savings and Loan Association, whereby a more recent form of installment stock should be acquired by the trustees, to be held as collateral by the mortgagee, and the earlier installment stock should be canceled at its then cash surrender value. In this latter agreement there was an account stated touching the condition of the loan, the disbursement of the cash surrender value of the older installment stock, and continuing thus:

"And said first parties hereby agree to faithfully meet the monthly payments on said class 'DL' shares, it being understood and agreed by and between the parties hereto *that the rate of interest on the note and real estate mortgage* hereinbefore described *shall hereafter be six percent* (6%) *per annum,* beginning with the first day of June, 1936, and the monthly payments on said note shall be eighty-four and 40/100 dollars ($84.40), each beginning

with the first day of June, 1936, and to consist of interest at the rate of six percent (6%) per annum computed on the monthly unpaid principal balances of said note and the remainder to apply as a payment on the principal indebtedness, it being expressly agreed that all the other terms and conditions of said note and mortgage shall remain and continue in full force and effect.

"BOARD OF TRUSTEES OF THE STRANGERS' REST BAPTIST CHURCH.

GEO. F. RICHARDSON.

*Parties of the First Part.*

"Witnesses to signatures: Charlie Tucker, Sam Madden, Clifford Wallace, S. L. Vaughn, Rev. C. A. Washington."

Plaintiff also filed a reply to the answer of the defendant, Rev. Charles A. Washington, which traversed any and all allegations of that answer contrary to or inconsistent with those of plaintiff's petition. The reply also pleaded facts substantially as set out in its reply to the answer of the defendant trustees, and alleged that the former pastor, Rev. Moses Williams, and defendant Rev. Charles A. Washington had collected money from the congregation of the church on numerous occasions to pay on the note and mortgage sued on, and that all the acts of the former board of trustees were done with full power and authority conferred on it by the congregation as provided in the constitution and bylaws, custom and practice of the said religious society and with the full approval and ratification thereof. Plaintiff also alleged that the note and mortgage were executed by the then duly elected, qualified and acting trustees of the Strangers' Rest Baptist Church in conformity with the authority vested in them by G. S. 1935, 17-1703, and by article XII, section 3, of the state constitution.

At this stage of the litigation, upon a proper showing, the trial court made an order substituting the Federal Savings and Loan Insurance Corporation, receiver for the Aetna Federal Savings and Loan Association, as plaintiff in this action. The substituted plaintiff filed an amendment to the reply to the answers of the trustees of the Strangers' Rest Baptist Church, in which reply it was alleged that on December 29, 1929, that church, by its duly constituted officers, executed a substitution agreement on the note and mortgage sued on, that the then pastor, Rev. C. A. Washington, signed that agreement, and that members of the congregation likewise signed. A copy of this substitution agreement was set out in full, as exhibit "F," and bore the signatures of sixteen trustees, and 131 individual members of the church, and Rev. C. A. Washington signed as witness to the signatures.

Defendants filed a demurrer to the reply and amendment to the

reply on the ground that they did not state facts sufficient to constitute a cause of action. This demurrer was overruled. Hence this appeal.

In the brief of appellant it is argued that the plaintiff's reply to the answer of the trustees and the amendment to the reply constitute a departure. It is doubtful if defendants' general demurrer to the reply raised this point. (G. S. 1935, 60-706; Phillips on Code Pleading, 2d ed., sec. 91; Merwin's Equity and Equity Pleading, sec. 963.) Passing that point, the pertinent law is that if the reply abandons the cause of action first alleged and resorts to another whereby the foundation of the action is changed, such reply would be open to a special demurrer, raising the legal question of a departure. (Phillips on Code Pleading, sec. 273.) But if the new matter in the reply is pleaded merely to meet the allegations of the answer, it will not constitute a departure unless it contradicts the facts stated in the petition, and if it is not adopted as a new basis of relief in place of the cause of action alleged in the petition. (*Hunter v. Allen,* 74 Kan. 679, 88 Pac. 252; *Armstrong v. Lough,* 128 Kan. 167, 277 Pac. 51.) In *Minter v. Shearer,* 117 Kan. 511, 232 Pac. 249, it was said:

"By the decision in *Hunter v. Allen* the court intended to sweep away finical notions of departure which had previously prevailed, and to restrict application of what was left of the doctrine of departure to those instances in which actual prejudice might result from confusion of issues." (p. 512.)

Applying these well-settled rules for determining the existence of a departure, a careful perusal of the lengthy pleadings and pertinent exhibits in this action, sufficiently summarized above, fails to disclose that the original cause of action has been abandoned and another pleaded in plaintiff's reply which contradicts the material facts alleged in the original petition. First and last the action was and still is an action upon a $10,000 note and to foreclose the mortgage given as its security. The answer of defendants alleged more or less potent defenses to the action which justified and perhaps required plaintiff in its reply to plead further to meet the allegations of the answer. Such is very far from a departure as defined and denounced by courts and text writers on pleading.

It is suggested that in the various substitution agreements whereby later issues of installment stock were executed in the name of the defendant church society, the personnel of the body of trustees is manifestly different, likewise the individual signatories, from those who signed the original instruments involved in the transac-

tion whereby the loan was procured and the note and mortgage executed. Since the original transaction had its inception in 1925, and this action was begun some fifteen years later, changes in the membership of the board of trustees and of the membership of the church congregation in the interim were inevitable. (*Omnes homines mortales sunt.*) Whether such changes occur in the membership of a church society, or of a board of county commissioners, or of a city council, as they are bound to do in the lapse of years, the church society, the county board, and the city council, continues to exist, and to be bound by the lawful obligations incurred by their predecessors in office. Whether members of the church congregation, who have joined the church society since the original obligation was incurred, and who have never actively or impliedly participated in the later substitution agreements are liable in this action, may present a question of common law and of church law we do not now decide, but see 54 C. J. 17.

On the question appealed, the judgment is affirmed.