No. 41,201

FIDELITY INVESTMENT COMPANY, et al., *Appellants,* v. WILLIAM (BILL) BRADFORD, et al., *Appellees.*

(336 P. 2d 401)

Opinion filed March 7, 1959.

*A. Martin Millard,* of Wichita, was on the briefs for the appellants.

*John E. Boyer, George J. Hondros, Paul J. Donaldson, Harold T. Beck, Kenneth P. Stewart,* and *Henry E. Herrman,* all of Wichita, were on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from an order of the trial court striking part of the separate replies of plaintiffs, Fidelity Investment Company and John Torkelson who, for clarity, will be referred to hereafter as Fidelity and Torkelson. Defendant William Bradford will be referred to as William, and the other defendants as follows: Bradford Drilling and Pump Service, Inc., as the Bradford Com-

pany, Gene Reynolds as Gene, and the Reynolds Drilling-Pump Service Company as the Reynolds Company.

Fidelity and the Business Mens' Assurance Company, both corporations authorized to do business in Kansas, and Torkelson, filed a petition against defendants wherein it was alleged that Torkelson had executed a chattel mortgage, duly recorded in Sedgwick county, to Fidelity, as service agent for Business Mens' Assurance Company, covering certain irrigation equipment. Torkelson had requested the Bradford Company to procure the best offer it could and sell the equipment subject to the chattel mortgage, Torkelson being assured of recovering his costs. William had agreed to these terms and had directed Torkelson to remove the equipment to the premises of Gene Reynolds, which Torkelson did. Plaintiffs had made demand for return of the equipment or payment of its reasonable market value of $5,000. This defendants had failed and refused to do.

Gene filed an answer in the form of a general denial and further stated that he admitted purchasing the equipment from the Bradford Company but denied knowledge of any outstanding interest in the plaintiffs. The sale was in the normal course of business without any disclosure of the existence of a lien or claim. The Bradford Company, a dealer in such equipment sold it as the company's property and not as the property of any individual. If the equipment involved was plaintiffs' property, this fact was not disclosed by William, the president. The equipment was alleged to be William's property and Gene had purchased it free and clear of any claims. If William had known of the interest of others in the equipment, he had failed to disclose such interest. The Bradford Company was at all times material the agent of plaintiffs and plaintiffs had granted to the Bradford Company authority to sell the equipment to Gene free and clear of any liens or claims and Gene had so purchased the equipment.

William and the Bradford Company answered generally and further stated the corporate capacities of the Bradford Company and the Reynolds Company and William's official capacity with the Bradford Company. Torkelson had authorized the Bradford Company, as a dealer, to sell on his behalf, the equipment involved and to apply the proceeds on Torkelson's indebtedness to the Bradford Company. At no time did Torkelson advise these defendants of any lien on the equipment. He represented it to be

free and clear and requested William, as an officer of the Bradford Company, to sell the equipment on his behalf for the best price obtainable. At all times and at Torkelson's request William and the Bradford Company were his agent. The Bradford Company, acting for Torkelson, Fidelity, and Business Mens' Assurance Company had sold the equipment to Gene for valuable consideration, without knowledge of any lien, and had paid Torkelson the proceeds therefrom as agreed.

Torkelson and Fidelity filed separate replies to each of the above answers denying generally any allegations inconsistent with the petition and specifically denying, under oath, any allegations of agency, and made this further allegation:

"THAT the defendant William (Bill) Bradford is the successor to Reynolds Drilling and Pump Service, Inc. owned by Gene Reynolds, defendant herein. THAT the defendant Gene Reynolds has an interest in the Bradford Pump and Well Service. THAT the purported sale from Bradford to Reynolds was not in the normal course of business; that the knowledge of one is imputed to the other because of their relationship."

Defendants moved the court to strike the paragraph above quoted from the reply for the reason it contained new matter and allegations not contained in the petition, and the pleading of such new matter is not proper or within the bounds of a reply. This motion was sustained and the paragraph stricken by order of the court, from which order the plaintiffs timely appealed.

Our sole question, therefore, is—did the above-quoted portion of the reply constitute a departure from the allegations contained in the petition which were the bases of plaintiffs' cause of action?

The contents of a reply are governed by the following provisions of G. S. 1949, 60-717:

"When the answer contains new matter, the plaintiff may reply to such new matter, denying generally or specifically, each allegation controverted by him; and he may allege . . . any new matter not inconsistent with the petition, constituting a defense to such new matter in the answer. . . ."

New matter in an answer which is not controverted in a reply, is governed by the provisions of G. S. 1949, 60-748:

". . . every material allegation of new matter in the answer not controverted by the reply, shall for the purposes of the action be taken as true; but the allegation of new matter in the reply shall be deemed to be controverted by the adverse party, as upon direct denial. . . . A demurrer to a reply shall not be held to admit any of the facts alleged in such reply for any purpose other than to determine the sufficiency thereof. . . ."

Without repeating the allegations of the answer, it is apparent that new matter was alleged therein as to the circumstances of the sale from William, or from the Bradford Company, as a dealer owning the equipment free and clear, to Gene in the normal course of business. Failure of plaintiffs to reply to this allegation in the answer would, under G. S. 1949, 60-748, be an admission that Gene was an innocent purchaser in the normal course of business. It cannot be denied that the allegation stricken from the reply constitutes a defense to the new matter alleged in the answer, as contemplated by G. S. 1949, 60-717.

Our attention is directed to the stricken allegation as being a departure from the allegations of the petition and we will consider the authorities cited on that proposition.

In the early case of *Hunter v. Allen*, 74 Kan. 679, 88 Pac. 252, a clearcut yardstick was established for determination of a departure from the allegations of a previous pleading by allegations of a subsequent pleading filed by the same party:

"New matter in the reply which the plaintiff is forced to plead in order to meet the allegations of the answer will not constitute departure if it does not contradict the facts stated in the petition and if it is not adopted as a new basis for relief in place of the cause of action presented by the petition." (Syl.)

The Hunter case contains a good discussion of previous decisions on the subject of departure and explains how they may be distinguished. The most elementary explanation as to why one case is held to be a departure in pleadings while another is not appears to be that each case presents its own set of facts and circumstances and a pleader must exercise great care or he may make an allegation in a subsequent pleading which, if proved, will in turn disprove the allegation in his petition, or other previous pleading, upon which his cause of action was originally predicated. We find the proposition similarly stated and enlarged in *Federal Savings & Loan Ins. Corp. v. Strangers' Rest Baptist Church*, 156 Kan. 205, 131 P. 2d 654, where the Honorable John S. Dawson, then Chief Justice, stated:

". . . the pertinent law is that if the reply abandons the cause of action first alleged and resorts to another whereby the foundation of the action is changed, such reply would be open to a special demurrer, raising the legal question of a departure . . . But if the new matter in the reply is pleaded merely to meet the allegations of the answer, it will not constitute a departure unless it contradicts the facts stated in the petition, and if it is not adopted

as a new basis of relief in place of the cause of action alleged in the petition." (p. 212.)

In *Minter v. Shearer*, 117 Kan. 511, 232 Pac. 249, it was further said:

"By the decision in *Hunter v. Allen* the court intended to sweep away finical notions of departure which had previously prevailed, and to restrict application of what was left of the doctrine of departure to those instances in which actual prejudice might result from confusion of issues." (p. 512.)

Both parties state this is an action in detinue, which is an erroneous premise in view of G. S. 1949, 60-201, whereby forms of action existing theretofore were abolished, and G. S. 1949, 60-737, whereby all fictions in pleadings were abolished. Simply stated, this is nothing more than an action to recover personal property or the value thereof.

We have not overlooked other authorities cited or produced by our research, but we conclude those referred to and discussed herein are sufficient to show that our question of whether the stricken portion of plaintiffs' reply was a departure from the cause of action relied upon for recovery, as alleged in the petition, should be answered that it was not, and as a result, the trial court erred in striking that portion of the reply.

Judgment reversed.